NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SACHA MARIE MELENDEZ,**

        **Plaintiff,**

**v.**                                                              **Case No. 6:15-cv-1319-Orl-37KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Sacha Marie Melendez, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 10, 12, and the parties' Joint Memorandum,[1] Doc. No. 14.

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 13. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

NOT FOR PUBLICATION

## PROCEDURAL HISTORY.

In 2012, Melendez filed an application for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.*, alleging that she became disabled on June 1, 2006.  R. 265.  In 2014, Melendez filed an application for benefits under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.*, alleging that she became disabled on October 30, 2007.  R. 275.  Melendez later amended her disability onset date to March 1, 2010.  R. 33.

After the OASDI application was denied originally and on reconsideration, Melendez asked for a hearing before an Administrative Law Judge ("ALJ").  R. 175.  An ALJ held a hearing on June 4, 2014.  Melendez, accompanied by a representative, and a vocational expert ("VE") testified at the hearing.  R. 30-61.  The ALJ indicated that the newly filed SSI application would be escalated and that both applications would be considered together.  R. 33.

After considering the hearing testimony and the evidence in the record, the ALJ found that Melendez was not disabled.  R. 124-39.  Melendez sought review of that decision by the Appeals Council.  The Appeals Council granted the request for review, vacated the ALJ's decision and remanded the case for resolution of issues stated in the order.  R. 150-52.

After remand, a second administrative hearing was held.  Melendez, accompanied by an attorney, and a VE testified at the hearing.  R. 62-87.

After considering the testimony and the evidence in the record, the ALJ issued a new decision.  The ALJ found that Melendez was insured under OASDI through December 31, 2012. The ALJ determined that Melendez had not engaged in substantial gainful activity since October 30, 2007.  R. 10.

NOT FOR PUBLICATION

The ALJ found that Melendez had the following severe impairments: asthma, chronic sinusitis, obstructive sleep apnea, anxiety related disorders, and affective disorders. R. 10. The ALJ concluded that Melendez's mental impairments would result in mild limitations in activities of daily living, moderate difficulties in social functioning and marked difficulties in concentration, persistence or pace. R. 11-12. The ALJ determined that Melendez's impairments or combination of impairments did not meet or equal a listed impairment. R. 11.

After considering the record evidence, the ALJ concluded that Melendez had the residual functional capacity ("RFC") to perform light work with the following limitations:

> [N]o more than occasional climbing; no exposure to concentrated fumes, gases, or poorly ventilated areas; simple, routine tasks with no exposure to interaction with the public and only occasional collaboration with supervisors and coworkers in an environment with only occasional workplace changes.

R. 13. In reaching this conclusion, the ALJ found that Melendez's reports of limitations from her impairments were not entirely credible. R. 14. The ALJ gave little weight to the August 2014 functional capacity assessment prepared by Balinder S. Chahal, M.D., a treating, board-certified psychiatrist. R. 17, 663. The ALJ gave great weight to a treatment note dated December 27, 2014 that the ALJ mistakenly believed was prepared by Judith A. Flanagan, ARNP, a treating mental health therapist. R. 17-18.[2]

Based on the testimony of a VE, the ALJ concluded that Melendez could not perform her past relevant work as an accounting clerk, hospital admitting clerk, medical records clerk, general duty nurse, or construction worker. R. 19. After considering the testimony of the VE from the first hearing, the ALJ found that there were light, unskilled jobs available

---

[2] The document containing the findings quoted by the ALJ is a hospital discharge summary. R. 1003-09. There is no indication this document was prepared by ARNP Flanagan.

in the national economy that Melendez could perform.  R. 20, 56-58, 83.  Therefore, the ALJ concluded that Melendez was not disabled.  R. 20.

Melendez asked the Appeals Council to review the ALJ's decision.  R. 2.  On June 6, 2015, the Appeals Council found no reason to review the ALJ's decision.  Doc. No. 14-1.

Melendez now seeks review of the final decision of the Commissioner by this Court.  Doc. No. 1.

## JURISDICTION AND STANDARD OF REVIEW.

Melendez having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).  A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are generally adequately stated in the parties' Joint Memorandum, which statement of facts I incorporate by reference. Accordingly, I will only summarize facts relevant to the issues raised to protect Melendez's privacy to the extent possible.

Melendez was born in 1976. R. 34.  She received an Associate's Degree in medical administration.   She previously worked in the nursing field, accounting, financing and

administration. R. 35, 55-56, 480. She was released from her last job due to her impairments. R. 35-36.

On June 6, 2009, Melendez was examined by Najib Kirmani, M.D. Upon examination, Dr. Kirmani observed that Melendez's mood was euthymic and her affect was within full range. Melendez completed a number of psychological tests. R. 457. Dr. Kirmani's diagnoses were depressive disorder, NOS, by history. Dr. Kirmani opined that Melendez had the ability to understand, remember and carry out instructions. R. 456.

Medical records reflect that Melendez was treated by ARNP Flanagan at Stewart-Marchman-Act Behavioral Healthcare ("ACT") beginning on March 10, 2010. ARNP Flanagan observed that her affect was labile and her mood depressed and anxious. R. 476. On April 16, 2010, Melendez reported experiencing anxiety with panic attacks, depression with mood swings, obsessive-compulsive disorder and fear of going out in public. She had been treated with medication since 2000. R. 479. ARNP Flanagan's impressions were Bipolar I Disorder, Mixed, Anxiety Disorder, Obsessive-Compulsive Disorder and Obsessive-Compulsive Personality Disorder. She rated Melendez's global assessment of functioning ("GAF") score at 50.[3] R. 481.

Thereafter, ARNP Flanagan continued to treat Melendez. On May 21, 2010, Melendez reported that she was better on medication, although she was tired and gaining weight from use of her medication. R. 471. ARNP Flanagan observed that Melendez's affect was labile, and her

---

[3] A GAF score of 41–50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM–IV at 32 (emphasis in original). *Norris v. Astrue*, No. 11-G-3154-E, 2012 WL 2577529, at * 3 (N.D. Ala. June 28, 2012) (quoting *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th Ed.) ("DSM-IV").

5

mood was depressed, anxious and irritable. She assessed Melendez's GAF score at 45. R. 472. On July 19, 2010, Melendez reported that her medications were "working great[.]" R. 469. Nevertheless, ARNP Flanagan noted that Melendez's mood was anxious, and she rated her GAF score at 50. R. 470. On November 1, 2010, Melendez reported feeling irritable and anxious. ARNP Flanagan observed that Melendez's affect was labile and her mood was anxious. Her GAF score was 50. R. 498-49. ARNP Flanagan noted that on March 2, 2011, Melendez reported some depression and no motivation. She had not been taking all of her medication. ARNP Flanagan noted that her affect was tearful/sad and her mood was depressed. Her GAF score was 50. R. 496-97. On May 25, 2011, Melendez reported that her medication was not working. R. 494. ARNP Flanagan noted that Melendez's mood was tearful/sad and labile with a depressed and anxious mood. Her GAF score was 55.[4] R. 495. On July 27, 2011, Melendez reported that she was depressed with increased anxiety. Clonidine helped relieve her anxiety but put her to sleep. R. 492. ARNP Flanagan noted that Melendez's mood was depressed and anxious. She rated her GAF score at 55. R. 492. On September 14, 2011, Melendez told ARNP Flanagan that she was still depressed and had anxiety. R. 290. ARNP Flanagan observed that Melendez's mood was depressed and anxious and her affect was labile. She rated Melendez's GAF score at 55. R. 491.

On September 21, 2011, Autumn McBride, LMFT, examined Melendez on referral from another therapist. LMFT McBride observed that Melendez's mood was depressed but her affect was appropriate. R. 628. After interviewing Melendez, LMFT McBride opined that Melendez's

---

[4] A GAF score of 51-60 reflects moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Owen v. Astrue*, No. 11-G-1672-NE, 2012 WL 2577520, at * 4 n. 1 (N.D. Ala. June 28, 2012) (quoting DSM-IV).

memory, concentration and attention were impaired and that her judgment and insight were mildly impaired. R. 629. Her diagnoses were Bipolar I Disorder, Most Recent Episode Depressed, with a GAF score of 51. R. 630. Thereafter, Melendez attended family therapy sessions through July 2012, although she missed several sessions. R. 589-624.[5]

Christine Grissom, M.D., at Coastal Mental Health Center, examined Melendez on April 17, 2012. Melendez reported irritable, angry crying episodes daily for four day. Dr. Grissom's diagnoses were mood disorder and anxiety disorder which she treated with medication. R. 654. On July 20, 2012, Dr. Grissom observed that Melendez's mood was euthymic. R. 658.

On July 7, 2012, Dr. Kirmani conducted a second disability examination. Dr. Kirmani observed that Melendez's mood was euthymic and her affect within full range. Dr. Kirmani completed a number of psychological tests. His diagnosis was Bipolar Disorder, NOS, by history. He opined that Melendez could understand, remember and carry out instructions. R. 567-69.

On July 19, 2012, Barbara Lewis, Ph.D., prepared a mental functional capacity assessment after review of Melendez's records. Dr. Lewis opined that Melendez had mild limitations in activities of daily living and moderate limitations in social functioning and concentration persistence or pace. R. 93. R. 92-94. Dr. Lewis opined as follows:

> Claimant can understand, retain, and carry out simple instructions. Claimant can consistently and usefully perform routine tasks on a sustained basis with normal supervision, adapt over time to most changes and task demands, make simple decisions and take appropriate precautions for normal hazards. Clmt has decreased ability to cooperate effectively with public and co-workers in completing simple tasks and transactions and will function best on tasks with limited social demands. While the evidence indicates the claimant does suffer some degree of limitations

---

[5] Melendez was also evaluated at Coastal Mental Health Center. Some of the reports from this facility are largely illegible. R. 515-22. An LPN at this facility noted on February 29, 2012 that Melendez still struggled with anxiety and that her feelings of irritability had worsened. R. 652.

7

from mental health issues, the symptom severity noted would not preclude the completion of simple tasks.

R. 98.

On September 26, 2012, Melendez returned to Dr. Grissom for re-evaluation. Dr. Grissom observed that Melendez appeared anxious and she exhibited a depressed mood. Her diagnoses remained mood disorder, NOS, and anxiety disorder, NOS, which was treated with medication. R. 659-60.

On October 15, 2012, Robert F. Schilling, Ph.D., prepared a mental functional capacity assessment after review of Melendez's records. R. 108-10, 114-15. He opined as follows:

> Claimant can understand, retain, and carry out simple instructions. Claimant can consistently and usefully perform routine tasks on a sustained basis with normal supervision, adapt over time to most changes and task demands, make simple decisions and take appropriate precautions for normal hazards. Clmt has decreased ability to cooperative effectively with public and co-workers in completing simple tasks and transactions and will function best on tasks with limited social demands. While the evidence indicates the claimant does suffer some degree of limitation from mental health issues, the symptom severity noted would not preclude the completion of simple tasks.

R. 115-16.

Dr. Chahal examined Melendez on November 15, 2012. His handwritten notes are largely illegible. R. 665-67. He circled findings that reflect that Melendez's memory was intact but poor and she had an inability to concentrate. R. 667. Dr. Chahal saw Melendez again on December 6, 2012. Once again, his handwritten notes are largely illegible. He checked boxes indicating that Melendez was euthymic, focused/attentive with fair insight and judgment. R. 669.

On January 3, 2013, Aroon Suansilppongse, M.D., prepared a Psychiatric Review Technique form and a mental functional capacity assessment after review of Melendez's records. R. 678-91. He found that Melendez had some moderate limitations in sustained concentration and

persistence, social interaction and the ability to set realistic goals or make plans independently of others. R. 689-90. He concluded as follows:

> The claimant is able to understand and remember instructions. The claimant is able to carry out instructions. Her anxiety and depressive reaction as well as alleged hallucinatory experience and pain would interfere with her ability for sustained concentration and persistence or for task completion. However, the claimant would be able to complete tasks at an acceptable pace. Her social avoidance and infrequent episodes of panic attacks would interfere with her ability to interact appropriately with supervisors, coworkers or the public. However, she would be able to complete tasks with infrequent contact with others. Her depressive reaction and polysubstance abuse would occasionally interfere with her ability to set realistic goals or make plans independent of others.

R. 691.

Melendez continued treatment with Dr. Chahal in 2013, 2014 and 2015. Dr. Chahal's handwritten notes are largely illegible. R. 919-37, 1055-59, 1073-78. However, ARNP Flanagan, who was then affiliated with Dr. Chahal's practice, noted on April 30, 2013 that Melendez was really sad and angry. Her GAF score was 65.[6] R. 930. On May 15, 2013, Melendez was feeling happy, although she still had some depression, anger and anxiety. Her GAF score was 68. R. 928. ARNP Flanagan noted that Melendez was attending therapy with Carole Hull. *See, e.g.,* R. 926; *see also* R. 672-77, 701-09. On September 16, 2013, ARNP Flanagan noted that Melendez was more depressed after breaking up with her boyfriend. Melendez indicated that she could not go to support groups because of panic attacks. ARNP Flanagan noted that Melendez's mood was dysphoric and anxious, and her insight and judgment were fair. Her GAF score was 62. R. 924.

---

[6] A GAF score of 61-70 indicates some mild symptoms which cause some difficulty in social, occupational, or school functioning but the individual generally functions well. *Shortridge v. Colvin*, No. 1:13-cv-184-MP-CAS, 2014 WL 7150619, at * 7 (N.D. Fla. Dec. 12, 2014).

In October 2013 and January 2014, ARNP Flanagan rated Melendez's GAF score at 62 and 68 respectively. R. 921-22.

On April 8, 2014, Melendez called a pharmacy asking for a prescription to be refilled because she was trying to kill herself. R. 393.

On July 13, 2014, Melendez arrived at an emergency room by ambulance after taking an intentional overdose of medication in a suicide attempt. R. 974. On July 14, 2014, Melendez agreed to voluntary commitment at ACT. She reported that she was no longer suicidal, but she admitted that she had expressed thoughts of ending her life the previous Saturday. R. 952, 957. Treatment notes reflect that her affect was blunted and her mood was anxious and depressed. R. 956. After treatment, Melendez was discharged with a GAF score of 76.[7] R. 962.

On August 15, 2014, Dr. Chahal prepared a mental functional capacity assessment. He opined that Melendez was seriously limited or unable to meet competitive standards in all areas of mental functioning, except that she had a limited but satisfactory ability to ask simple questions or request assistance. He wrote, "Pt. is unable [to] concentrate & focus as having mood swings, racing thoughts, abnormal thinking, anxiety, paranoia, etc. . . . Unable to function normally. She has been diagnosed with Bipolar Mood Disorder with psychotic features and panic disorder. Pt has had limited response to medication." R. 1053-54. He opined that Melendez's impairment would cause her to be absent from work more than four days per month. R. 1054. In sum, he wrote, "Pt is unable to work due to severe illness." *Id.*

---

[7] A GAF score of 71 to 80 reflects "[i]f any symptoms are present, they are transient and expectable reactions to psychosocial stressors" and reflect "**no more than slight impairment in social**, **occupational**, **or school functioning**." *Hege v. Astrue*, No. 8:08-cv-1424-T-TGW, 2009 WL 2246132, at *4-5 (M.D. Fla. July 27, 2009) (quoting DSM-IV-TR, at 34 (4th ed. text revision)).

NOT FOR PUBLICATION

On September 25, 2014, Melendez reported that her sleep was good and that her mood had improved, however weight gain was depressing her. R. 1062. ARNP Flanagan diagnosed Melendez with Bipolar Disorder I and Agoraphobia with Panic Disorder, with a GAF score of 56. R. 1062. On November 17, 2014, ARNP Flanagan opined that Melendez had a GAF score of 56. R. 1069.

Melendez was again hospitalized on December 27, 2014 due to mental health issues. R. 1002. She was discharged on December 30, 2014. The discharge summary stated "Resume activities as tolerated" and noted that Melendez was "free from risk of self-harm." R. 1003, 1007.

During the hearing before remand, the ALJ asked the VE to assume a hypothetical person with Melendez's work and education background with the following limitations:

> So she's capable of performing at a light exertional level but with only occasional climbing; no exposure to concentrated fumes, gases, poorly ventilated areas; she needs simple, routine tasks; no exposure to the public; and only occasional collaboration with her supervisors and coworkers in an environment that basically stays the same and only has occasional changes.

R. 55. The VE testified that this hypothetical person could not perform any of Melendez's past work. The VE testified that the hypothetical person could perform light or sedentary, unskilled jobs available in the national economy. R. 56-58. If the person was off-task and away from the duty station more than 20% of the day, the person would not be employable. R. 58. Similarly, if the person missed more than three or four days of work a month due to her mental impairments, she would not be employable. R. 60.

At the hearing after remand, the ALJ asked the VE whether a person could perform the jobs identified at the first hearing if she could not concentrate more than fifteen minutes at a time. The VE testified that there would be no jobs this person could perform. R. 83.

11

NOT FOR PUBLICATION

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, Melendez raises four assignments of error. She contends that the ALJ erred in giving little weight to Dr. Chahal's August 2014 functional capacity assessment. She argues that the ALJ did not follow the instructions of the Appeals Council in its remand order. She submits that the ALJ erred in giving greater weight to statements in a hospital discharge record which the ALJ mistakenly believed was prepared by ARNP Flanagan, a treating professional. Finally, she asserts that the ALJ erred by crediting the opinions of reviewing professionals. She asks that the Court reverse the final decision of the Commissioner and remand the case for further proceedings. These are the only issues I will address.

*Opinion of Dr. Chahal.*

As discussed above, Dr. Chahal was a treating psychiatrist. As such, his opinions "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

The ALJ gave little weight to Dr. Chahal's August 2014 opinion that Melendez could not work and was unable to concentrate or focus as "inconsistent with his own records and the longitudinal review of the evidence revealing improvement with proper treatment." R. 17. The selective treatment records the ALJ cited in support of these findings are the typed records prepared by ARNP Flanagan, not Dr. Chahal's largely illegible handwritten treatment notes. R. 17 (citing Exhibit 46F, at 17-18, 23-25).

In determining whether good cause exists to give little weight to the opinion of a treating physician, "[a]n ALJ is not free to simply ignore medical evidence, nor may he pick and choose

between the records selecting those portions which support his ultimate conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence." *Castleberry v. Colvin*, No. 2:13cv411-CSC, 2014 WL 2440943, at *3 (M.D. Ala. May 30, 2014) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839-41 (11th Cir. 1992) (per curiam)). To the extent that the ALJ could not read Dr. Chahal's treatment notes, the better practice would have been to contact Dr. Chahal to obtain legible copies of his treatment notes or his testimony to support his functional capacity assessment. The illegibility of important evidentiary material can warrant a remand for clarification and supplementation to determine whether the Commissioner fully understood the medical evidence in the record. *Yamin v. Comm'r of Soc. Sec.*, No. 6:07-cv-1574-Orl-GJK, 2009 WL 799457, at * 12-13 (M.D. Fla. March 24, 2009).

The ALJ also stated that Dr. Chahal's opinion was "inconsistent with the weight of the evidence that establishes the claimant's mental impairments are mild to moderate[.]" R. 17. This finding is inconsistent with the ALJ's own conclusion that Melendez had marked limitations in concentration, persistence or pace.

For these reasons, I recommend that the Court find that the ALJ failed to state good cause based on substantial evidence in the record for affording little weight to Dr. Chahal's functional capacity assessment.

NOT FOR PUBLICATION

*Compliance with the Appeals Council Remand Order.*

The Appeals Council required, among other things, that the ALJ further evaluate Melendez's mental impairments, give further consideration to her maximum RFC and, if warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effects of the assessed limitations on Melendez's occupation base. R. 151. Social Security regulations require an ALJ to take any action that is ordered by the Appeals Council, 20 C.F.R. § 404.977(b), and the failure to do so is reversible error. *Warren-Ward v. Astrue*, No. 1:07cv811-TFM, 2008 WL 2397390, at *2-3 (M.D. Ala. June 10, 2008).

The ALJ complied with the first part of this portion of the remand order by re-evaluating Melendez's mental functional limitations and concluding that Melendez had marked difficulties in concentration, persistence or pace. Melendez argues that the ALJ did not comply with the remainder of this portion of the remand order because the ALJ did not include in the RFC marked difficulties in concentration, persistence or pace or ask the VE during the hearing on remand how such marked difficulties would impact the occupational base of work that Melendez could perform. I recommend that the Court find that this argument is well taken.

In the decision before remand, the ALJ found that Melendez had only moderate limitations in concentration, persistence or pace. The ALJ included in the RFC a limitation to simple routine tasks, ostensibly to account for those moderate limitations. R. 129-30. In the decision after remand, the ALJ found that Melendez's mental impairment had deteriorated to that point that she had marked limitations in concentration, persistence or pace, yet the ALJ made no adjustment in the RFC to account for the worsening of her condition in this mental functional area. Without clarification from the ALJ about why the RFC was not adjusted to account for the deterioration in

14

Melendez's condition, I recommend that the Court find that the ALJ's decision is insufficient to establish that the ALJ followed the Appeals Council remand order requiring reassessment of Melendez's maximum RFC and development of VE evidence to establish how the new RFC assessment impacted the occupational basis of work available to her. *See, e.g., Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)(quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)(per curiam)).

*Reliance on December 2014 Hospital Discharge Summary.*

The ALJ gave great weight to a December 2014 assessment that the ALJ mistakenly believed was prepared by ARNP Flanagan, a treating professional, stating that the assessment was based on ARNP Flanagan's "specialized knowledge of the claimant's limitations as the claimant's long-term mental health therapist[.]" R. 18. The record reflects, and counsel for the Commissioner concedes, that the December 2014 document the ALJ gave great weight was not prepared by ARNP Flanagan. Accordingly, I recommend that the Court find that the decision to give great weight to this assessment because it was prepared by a long-term treating professional is not supported by substantial evidence.

*Weight Given to Opinions of Reviewing Professionals.*

In the last assignment of error, counsel for Melendez argues that the ALJ erred by giving great weight to the opinions of Drs. Suansulppongse, Lewis and Schilling, whose opinions were based on review of the record as it existed at the time their opinions were rendered. Counsel asserts that opinions of these professionals likely would have changed if they had reviewed the later records that included Melendez's episodes of decompensation.

Under certain circumstances, an ALJ may rely on opinions from professionals who did not treat or examine the claimant. "[A]fter independently discounting a treating physician's opinion, all of the medical sources in the record are put on an equal plane and the ALJ accords them weight pursuant to the factors enumerated in 20 C.F.R. § 404.1527. At this point, the opinions of non-examining sources may be accorded greater weight than those of examining sources." *See Lamb* [*v. Bowen*]*,* 847 F.2d at 703 ("The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician.")." *Hicks v. Colvin*, Civil Action No. 1:12-cv-1663-JEC, 2014 WL 3573732, at * 8 (N.D. Ga. July 21, 2014)(citing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)). Because I recommend that the Court find that the ALJ did not properly discount the opinion of Dr. Chahal, a treating psychiatrist, I also recommend that the Court find that the ALJ erred as a matter of law by giving greater weight to the opinions of the reviewing professionals. Accordingly, on remand the Commissioner should require re-evaluation of the opinions of the reviewing professionals after correctly determining the weight to be giving to the opinions of treating and examining professionals.

*Further Proceedings*.

Based on the errors identified above, I recommend that the Court find that the final decision of the Commissioner must be reversed and that the case should be remanded for further proceedings, as requested by counsel for Melendez.

## RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **REVERSED** pursuant to sentence four of § 405(g) and that the case be

NOT FOR PUBLICATION

**REMANDED** for further proceedings.  I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its Order on the Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

**RESPECTFULLY RECOMMENDED** this 10th day of November 2016.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Judge
Courtroom Deputy Clerk
Counsel of Record